# EXHIBIT 2

Tyson Gibb (SBN 339154)
tyson@setarehlaw.com
SETAREH LAW GROUP
9665 Wilshire Boulevard, Suite 430
Beverly Hills, California 90212
Telephone (310) 888-7771
Facsimile (310) 888-0109

Attorneys for Plaintiff LAW OFFICES OF SHAUN SETAREH, APC

SUPERIOR COURT OF THE STATE OF CALIFORNIA

FOR THE COUNTY OF LOS ANGELES

UNLIMITED JURISDICTION

| | |
|---|---|
| LAW OFFICES OF SHAUN SETAREH, APC, a California professional corporation,<br><br>*Plaintiff,*<br><br>v.<br><br>CONTINENTAL CASUALTY COMPANY, an Illinois corporation; and DOES 1 through 50, inclusive,<br><br>*Defendants.* | Case No. 23STCV04714<br><br>**COMPLAINT**<br><br>1. Breach of Contract;<br>2. Tortious Breach of the Implied Covenant of Good Faith and Fair Dealing;<br>3. Fraud in the Inducement;<br>4. Fraudulent Promise Made without Intent to Perform;<br>5. Negligent Misrepresentation;<br>6. Declaratory Relief;<br><br>**JURY TRIAL DEMANDED** |

COMPLAINT

Plaintiff LAW OFFICES OF SHAUN SETAREH, APC ("Plaintiff"), complains and alleges as follows:

## JURISDICTION AND VENUE

1. This Court has subject matter jurisdiction to hear this case because the monetary relief, damages and restitution sought in this complaint for Defendants' conduct exceeds the minimal jurisdictional limits of the Superior Court of the State of California.

2. Venue is proper in the County of Los Angeles pursuant to Code of Civil Procedure §§ 395(a) and 395.5 in that liability arose there, because it is the County where the contract was made and/or entered into, and because at least some of the transactions that are the subject matter of this Complaint occurred therein and/or each defendant is found, maintains offices, transacts business, and/or has an agent therein.

## PARTIES

3. Plaintiff is and was, and at all relevant times mentioned herein, a California professional corporation operating in the State of California, the County of Los Angeles.

4. Plaintiff is informed and believes, and thereupon alleges, that Defendant CONTINENTAL CASUALTY COMPANY ("Defendant" or "CCC") is, and at all relevant times mentioned herein, an Illinois corporation doing business in the State of California.

5. Plaintiff is ignorant of the true names and capacities of the defendants sued herein as DOES 1 through 50, inclusive, and therefore sues these defendants by such fictitious names. Plaintiff will amend this Complaint to allege the true names and capacities of the DOE defendants when ascertained. Plaintiff is informed and believes, and thereupon alleges, that each of the fictitiously named defendants are responsible in some manner for the occurrences, acts and omissions alleged herein and that Plaintiff's alleged damages were proximately caused by these defendants, and each of them. Plaintiff will amend this complaint to allege both the true names and capacities of the DOE defendants when ascertained.

6. Plaintiff is informed and believes, and thereupon alleges that, at all relevant times mentioned herein, some or all of the defendants were the representatives, agents, employees, partners, directors, associates, joint venturers, joint employers, principals, or co-participants of some

or all of the other defendants, and, in doing the things alleged herein, were acting within the course and scope of such relationship and with the full knowledge, consent, and ratification by such other defendants.

## **GENERAL ALLEGATIONS COMMON TO ALL CAUSES OF ACTION**

7. Plaintiff is a law office and professional corporation in Los Angeles County primarily representing plaintiff side in consumer and employment related lawsuits. CCC is an insurer that sold Plaintiff a property insurance policy protecting Plaintiff against (without limitation) losses of business income when there was, to quote the policy, "direct physical loss" or "damage to" the covered property.

8. The policy states that "We will pay for the actual loss of Business Income you sustain due to the necessary "suspension" of your "operations" during the "period of restoration." The "suspension" must be caused by direct physical loss of or damage to property at the described premises. The loss or damage must be caused by or result from a Covered Cause of Loss. With respect to loss of or damage to personal property in the open or personal property in a vehicle, the described premises **include the area within 1,000 feet of the site at which the described premises are located**." (emphasis added)

9. Defendants' incredibly broad policy coverage was drafted to extend not only to Plaintiff's office location, but also to the wide area within 1,000 feet of the office.

10. The property delineated by the insurance policy was located at 315 S Beverly Dr. Suite 315, Beverly Hills, CA. This address was the primary office Plaintiff used to conduct its affairs, and where Plaintiff's employees and staff worked.

11. As COVID-19 began spreading around the United States, Plaintiff, like thousands of other businesses, was forced to suspend its operations temporarily.

12. The first 20 confirmed COVID-19 cases in the United States were in January and February 2020. By December 2020, California had the highest number of new daily COVID-19

2
COMPLAINT

cases per capita in the United States.[1] Based on scientific data and published reports, COVID-19 began spreading throughout California, with its spread largely through "community transmission" and often by people with no symptoms. During the course of 2020, and based on data about the nature of how COVID-19 spread, Plaintiff is informed and believes, and on that basis alleges, that COVID-19 was present at various times on and in its insured property. The presence of COVID-19 physically alters the air in which it is found and the surfaces of property on which it lands. Furthermore, the presence and threatened presence of COVID-19 and the orders of state and local civil authorities and guidance from the Centers for Disease Control impaired Plaintiff's ability to use its insured location for its intended uses and purposes. As a result, Plaintiff has suffered substantial financial losses, including lost profits and lost business opportunities.

13.     COVID-19 spreads between people, mainly when an infected person is in close contact with another person.

14.     The virus can spread from an infected person's mouth or nose in small liquid particles when they cough, sneeze, speak, sing or breathe heavily. These liquid particles are different sizes, ranging from larger 'respiratory droplets' to smaller 'aerosols'.

15.     Other people can catch COVID-19 when the virus gets into their mouth, nose or eyes, which is more likely to happen when people are in direct or close contact (less than 6 feet apart) with an infected person.

16.     Current evidence suggests that the main way the virus spreads is by respiratory droplets among people who are in close contact with each other.

17.     Aerosol transmission can occur in specific settings, particularly in indoor, crowded and inadequately ventilated spaces, where infected person(s) spend long periods of time with others, such as offices.

18.     The virus can also spread after infected people sneeze, cough on, or touch surfaces,

---

[1] SFGATE, Dec. 26, 2020, "California now has the worst COVID-19 spread in US": https://www.sfgate.com/bayarea/article/California-COVID-19-cases-data-CDC-worst-states-US-15829422.php

1 or objects, such as tables, doorknobs and handrails. Other people may become infected by touching
2 these contaminated surfaces, then touching their eyes, noses or mouths without having cleaned
3 their hands first.[2]

4     19. Though microscopic, COVID-19—like all viruses—is a physical substance.
5 COVID-19 is highly contagious and mobile. Even with reasonable efforts to slow the spread, it
6 spreads from person to person primarily through fine aerosolized droplets containing the virus.

7     20. Aerosolized droplets containing COVID-19 exhaled by normal breathing can travel
8 significant distances and stay suspended in air and infective for at least 16 hours until gravity
9 ultimately forces them to the nearest surface.[3] These droplets thus physically alter the air and
10 airspace in which they are present and the surfaces of both the real and personal property to which
11 they attach, constituting physical loss or damage. By doing so, they can render both real and
12 personal property unusable for its intended purpose and function, constituting physical loss or
13 damage. Their presence, particularly because COVID-19 can be present in the air and on surfaces
14 anytime any infected person breathes, requires steps to be taken to minimize their spread, such as
15 physical distancing, regular disinfection, air filtration, and further physical alterations, such as
16 installation of physical barriers restricting the movement of the aerosolized droplets.

17     21. Scientists have likened the ubiquitous aerosolized droplets of the virus to smoke,
18 present in the air long after the source of its dissemination has gone.[4] Thus, absent proper safety
19 precautions and protocols, entering a building or other location where COVID-19 may be
20 physically present in the air can pose an imminent and severe risk to human health.

21     22. In California, there have been more 12 million confirmed cases in the state, of

---

[2] World Health Organization, Dec. 23, 2021, "Coronavirus disease (COVID-19): How is it transmitted?": https://www.who.int/emergencies/diseases/novel-coronavirus-2019/question-and-answers-hub/q-a-detail/coronavirus-disease-covid-19-how-is-it-transmitted

[3] Leslie Tate, Virus Survives In Air For Hours, Tulanian (Fall 2020): https://tulanian.tulane.edu/fall-2020/virus-survives-in-air-for-hours

[4] Science Magazine, Oct. 16, 2020, "Airborne Transmission of SARS-CoV-2,": https://science.sciencemag.org/content/370/6514/303.2

which more than 100,000 have resulted in deaths.[5]

23. Defendants policy coverage included the area within 1,000 feet of Plaintiff's office, extending widely out into surrounding society. *Millions* of people were affected with COVID-19, spreading the virus physically through the air and in every possible direction. COVID-19 was physically present at and around Plaintiff's office, damaging the broad swath of property covered by Defendants insurance policy.

24. Due to the prevalence of COVID-19 and the lack of availability of widespread testing, in March 2020, civil authorities throughout the United States began issuing "stay home" and "shelter in place" orders, travel restrictions, quarantines, and other orders, including orders requiring the suspension of non-essential business operations. Only by doing so could the spread of COVID-19 in the first months of the pandemic be abated—after all, COVID-19 testing was not readily available and was imprecise, and many carriers of COVID-19 had no symptoms. Thus, closures were deemed necessary—by health agencies and most businesses in order to curtail the spread of COVID-19. The closure orders prohibited or limited the use and operations of Plaintiff's insured location. This meant that Plaintiff (and many other businesses) temporarily could not use their insured location and property for their intended purpose.

25. Plaintiff was impacted by the lockdown orders.

26. In California, Governor Gavin Newsom issued Executive Order N-25-20, ordering that: "All residents are to heed any orders and guidance of state and local public health officials, including but not limited to the imposition of social distancing measures, to control the spread of COVID-19." Executive Order N-25-20 took effect on March 12, 2020.

27. On March 19, 2020, the State of California issued an Order of the State Public Health Officer, which required all individuals living in the state to stay at home or at their place of residence "except as needed to maintain operations of the federal critical infrastructure sectors." On that same date, California Governor Newsom issued Executive Order N-33-20, expressly

---

[5] The NY Times, "Tracking Coronavirus in California: Latest Map and Case Count": https://www.nytimes.com/interactive/2021/us/california-covid-cases.html

requiring California residents to follow the March 19, 2020, Order of the State Public Health Officer, and incorporating by reference California Government Code 8665, which provides that "[a]ny person ... who refuses or willfully neglects to obey any lawful order ... issued as provided in this chapter, shall be guilty of a misdemeanor and, upon conviction thereof, shall be punishable by a fine of not to exceed one thousand dollars ($1,000) or by imprisonment for not to exceed six months or by both such fine and imprisonment."

28. Officials of Los Angeles County subsequently issued similar orders in response to the rapid spread of COVID-19 and the resulting damage to individuals and property that it causes.

29. On or around January 26, 2021, Plaintiff presented a claim to CCC for loss of business income in connection with the California and governmental lockdowns in response to COVID-19.

30. On or around March 3, 2021, Plaintiff provided CCC with copies of its profit and loss statements for the time of the closure and the previous year for comparison.

31. When Plaintiff turned to CCC, Plaintiff reasonably expected CCC to cover its losses. However, instead of honoring its policy, CCC wrongfully denied coverage and refused to pay Plaintiff for any portion of its losses.

32. There is no merit to CCC's refusal to pay Plaintiff for its losses. The policy here promised coverage for "direct physical loss" or "damage to" the insured property, a phrase that CCC and other insurers have known for decades extends to losses caused by the presence of a hazardous substance in the airspace inside a building or on property, and losses that result when the use or function of property is substantially impaired, even if the property has not been physically altered.

33. CCC and other insurers were repeatedly warned over the years of the potential impact of pandemics. In fact, there were many publicly available reports about the risks of pandemics and what insurers should do—in the months and years before the outbreak of the COVID-19 pandemic.

34. CCC also has known, or should have known, for decades that its policies could be held to cover losses from the presence of a hazardous substance, such a virus inside buildings or

because a building could not be used for its intended purposes or function. As CCC has known, or should have known, for decades many courts have held that the presence of a hazardous substance in property, including the airspace inside buildings, constitutes property damage and that there may be "direct physical loss" to property even if the property is not physically damaged.

35. Insurers have had a "virus or bacteria" exclusion approved for use throughout the United States.

36. However, Plaintiff is informed and believes, and on that basis alleges, that even though CCC knew they could be liable for losses from viruses and pandemics if they did not include an appropriate exclusion in their policies, CCC still sold the policy here without including such an exclusion. Therefore, CCC should have anticipated that it would be obligated to pay for losses when it did not include such an exclusion.

37. The lockdown orders and policies also impaired access to Plaintiff's insured property. Indeed, the lockdowns restricted or prohibited employees and clients from accessing or visiting Plaintiff's insured property.

38. Because COVID-19 causes a distinct, demonstrable, physical alteration to property, it constitutes "direct physical loss or damage" to property as that phrase is used in the Policy.

39. Additionally, the presence or potential presence of COVID-19 at, on, and in insured property prevents or impairs the use of the property, thus constituting "direct physical loss" to property as that phrase is used in the Policy, even if it did not constitute "damage" to property as that term is used in the Policy.

40. Plaintiff is therefore informed and believes, and on that basis alleges, that COVID-19 has been present at and in or around its insured property.

41. Given the widespread nature of COVID-19, its spread through community transfer, and the fact that communal office spaces are one of the most dangerous sources of COVID-19, COVID-19 has been or was present at or around Plaintiff's insured property. The way local officials decided to prevent the presence of COVID-19 was with closures and lockdowns because of the likelihood (almost a near certainty) that if people continued to work in their communal office spaces, COVID-19 would be physically present. That presence constitutes "direct loss or

damage to property" and rendered the insured property unfit for their intended purpose.

42. Plaintiff is informed and believes, and on that basis alleges, that COVID-19 has been present at numerous dependent business premises in the vicinity of Plaintiff's insured property.

43. As COVID-19 and COVID-19 spread around the world, Plaintiff has suffered loss and damage covered by the Policy in an amount to be established at trial.

## FIRST CAUSE OF ACTION
## BREACH OF CONTRACT
### (Against All Defendants)

44. Plaintiff re-alleges and incorporates all preceding paragraphs as though fully set forth herein.

45. Plaintiff timely notified CCC of its losses.

46. In its denial letter, received on or around March 17, 2021, CCC ignored the Policy's grant of coverage for "direct physical loss" or "damage" and the policy at issue's coverage for such loss or damage and the economic losses resulting from covered "direct physical loss" or "damage."

47. Instead, CCC denied its coverage obligations.

48. Contrary to CCC's position, coverage is triggered by physical loss in addition to damage. Plaintiff's losses, as described above, include both physical loss and damage. In addition, Plaintiff's losses have a number of causes and trigger a number of covered perils that are not excluded in the policy.

49. As a result of the actual and/or potential presence of COVID-19 in and on its properties and the suspension of its business operations, Plaintiff sustained "physical loss" or "damage" as that term is used in the policy.

50. The lockdowns and closures further prohibited Plaintiff's access to its insured premises. Because COVID-19 can adhere to surfaces of property and can linger in the air in buildings for hours, its presence on or around property amounts to "direct physical loss" or "damage" as that phrase is used in the policy. In fact, given the manner in which COVID-19 lingers in the air and on surfaces, its manner of transmission, and the desire to "flatten the curve," Plaintiff's

premises and the premises upon which it depends were not capable of fulfilling their essential functions. Accordingly, the lockdowns substantially impaired the use and function of premises.

51. Plaintiff is informed and believes, and on that basis alleges, that COVID-19 particles attached to and damaged, or but for the lockdowns would have attached to and damaged, Plaintiff's insured premises, as well as the surrounding vicinity. The threat presented by the actual or potential presence of COVID-19 rendered Plaintiff's premises unsafe and unusable, constituting "direct physical loss" or "damage."

52. As a result of the suspension and impairment of operations at the insured property, Plaintiff has incurred expenses covered by the policy. These losses were caused by the presence of COVID-19 on, in, or around its insured property, the civil authority orders and lockdowns, or both.

53. Plaintiff also sustained loss and extra expense caused by direct physical loss or damage to a "dependent business premises," as that term is used in the policy.

54. By suspending business operations, Plaintiff preserved the functional viability of the insured premises. The costs and losses associated with the closures therefore constitute reasonable costs incurred to protect the covered property from further loss or damage.

55. The suspension of business operations at the insured property as a result of the property damage caused by the presence of COVID-19 and the related lockdowns resulted in significant losses to Plaintiff that will exceed the policy's limits.

56. Although Plaintiff has sustained Business Income and Extra Expense losses falling squarely with the policy's coverage, CCC failed and refused to acknowledge coverage for Plaintiff's losses and refused to pay any portion of them, including the amounts Plaintiff has incurred, and is incurring.

57. Further, CCC denied Plaintiff's claim, incorrectly asserting that the losses were not caused by direct physical loss or damage or due to the lockdowns. CCC took this position even though the local authorities where the insured property was located issued orders in response to the presence of COVID-19; even though the orders declared that COVID-19 was causing property damage; and even though the presence of COVID-19 on or around real and personal property and in

the airspace amounts to "physical loss" or "damage" to property under the governing rules of insurance policy interpretation.

58. As a direct and proximate result of Defendants' breaches described in this complaint, Plaintiff has been damaged in an amount to conform to proof at trial.

## SECOND CAUSE OF ACTION

## BREACH OF IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING

### (Against All Defendants)

59. Plaintiff re-alleges and incorporates all preceding paragraphs as though fully set forth herein.

60. Implied in the Policy was a covenant that CCC would act in good faith and deal fairly with Plaintiff, that CCC would do nothing to interfere with right of Plaintiff to receive benefits due under the policy, and that CCC would give at least the same level of consideration to the interests of Plaintiff as it gave to its own interests.

61. CCC also had a duty under the policy, the law, and insurance industry custom, practice, and standards to conduct a prompt and thorough investigation, including as to all bases that might support Plaintiff's claims for insurance coverage, before reserving rights to deny or denying, coverage.

62. Instead of complying with its duties, CCC acted in bad faith by, among other things:
a) failing to conduct a full and thorough investigation of Plaintiff's claim for insurance coverage and asserting grounds for denying coverage without conducting such investigation;
b) wrongfully and unreasonably asserting grounds for denying coverage that CCC knew, or should have known, are not supported by, and in fact are contrary to, the terms of the policy, the law, insurance industry custom and practice, and the facts;
c) failing to fully inquire into the bases that might support coverage for Plaintiff's claim;
d) failing to conduct an adequate investigation of the losses suffered by Plaintiff, and asserting grounds for disputing coverage based on its inadequate investigation;
e) unreasonably failing and refusing to honor its promises and representations in the policy it issued to Plaintiff;

f) giving greater consideration to its own interests than it gave to the interests of Plaintiff;

g) compelling Plaintiff to file this suit in order to receive the contractual benefits that it bought and for which it paid; and

h) otherwise acting as alleged above.

63. In breach of the implied covenant of good faith and fair dealing, CCC did the things and committed the acts alleged above for the purpose of consciously withholding from Plaintiff the rights and benefits to which it is and are entitled under the policy.

64. As a direct and proximate result of the bad faith engaged in by Defendants, Plaintiff has been damaged in an amount to be determined at time of trial.

65. As a direct and proximate result of Defendants' breach, Plaintiff has suffered losses all to its damage in amounts to be proven at trial.

66. The aforementioned acts of Defendants were willful, wanton, malicious, intentional, oppressive, and despicable, and were done in willful and conscious disregard of the rights of Plaintiff, and were done by managerial agents and employees of Defendants, or with the express knowledge, consent, and ratification of managerial employees of Defendants, and thereby justify the awarding of punitive and exemplary damages in an amount to be determined at time of trial.

### THIRD CAUSE OF ACTION

### FRAUD IN THE INDUCEMENT

### (Against All Defendants)

67. Plaintiff incorporates by this reference the paragraphs above as if fully set forth herein.

68. Defendants made misrepresentations to Plaintiff that they knew to be false and/or had no reasonable basis to believe to be true, and failed to disclose information to Plaintiff that Defendants knew was critical to Plaintiffs decision making, all with the intention of misleading Plaintiff, and Plaintiff relied on Defendants' representations by purchasing an insurance policy. Plaintiff's reliance on Defendants' representations was a substantial factor in causing the aforementioned harm to Plaintiff.

69. As a direct and proximate result of Defendants' fraud and deceit as discussed herein, Plaintiff has been injured, has suffered damages, and continues to suffer damages, and as a result Plaintiff is entitled to recover those damages.

## FOURTH CAUSE OF ACTION

## PROMISSORY FRAUD

### (Against All Defendants)

70. Plaintiff re-alleges and incorporates all preceding paragraphs as though fully set forth herein.

71. In selling the policy, CCC expressly and impliedly represented to Plaintiff that the policy would be applied as written and would cover all forms of physical loss or damage unless the cause of the loss was excluded. At no time during the discussions leading to Plaintiff's purchase of the policy did any representative of CCC ever disclose that despite the representations in the policy, CCC believed and would contend that it had no obligation to cover losses caused by a virus or pandemic.

72. Plaintiff is informed and believes, and on that basis alleges, that at the time that CCC made its promises and representations, the promises and representations were false.

73. Plaintiff is informed and believes, and on that basis alleges, that at the time that CCC made these promises and representations, CCC did not intend to honor its representations or perform these promises and intended not to cover losses caused by a virus or pandemic.

74. As a direct and proximate result of CCC's acts, Plaintiff has sustained damages in an amount in excess of this Court's jurisdictional limits, plus interest, for which CCC is liable, including the premiums it paid to CCC. The amount of Plaintiff's damages is not yet precisely known but will be established according to proof.

75. CCC's conduct constitutes oppression, fraud, and/or malice. CCC engaged in a series of acts designed to deny the benefits due under the Policy that CCC promised and represented, and to conceal and/or mispresent material facts.

76. Plaintiff is informed and believes, and on that basis alleges, that CCC— acting through one or more of its officers, directors, or other corporate employees with substantial

1 | independent and discretionary authority over significant aspects of CCC's business—performed,
2 | authorized, and/or ratified the fraudulent conduct alleged above.

3 |   77. CCC's conduct has been done with a conscious disregard of the rights of Plaintiff, constituting oppression, fraud, or malice. CCC engaged in a series of acts designed to deny Plaintiff the benefits due under the Policy. Specifically, CCC, by acting as alleged above, consciously disregarded Plaintiff's respective rights and forced Plaintiff to incur substantial financial losses, thereby inflicting substantial financial damage on Plaintiff. CCC ignored Plaintiff's interests and concerns with the requisite intent to injure within the meaning of California Civil Code section 3294. Therefore, Plaintiff is entitled to recover punitive damages from CCC in an amount sufficient to punish and make an example of CCC and to deter similar conduct in the future.

## FIFTH CAUSE OF ACTION

## NEGLIGENT MISREPRESENTATION

### (Against All Defendants)

  78. Plaintiff re-alleges and incorporates all preceding paragraphs as though fully set forth herein.

  79. Plaintiff is informed and believes, and on that basis alleges, that at the time that CCC made the promises and representations about the policy, CCC made them without any reasonable basis to believe they were true and with the intent and knowledge that Plaintiff would rely upon them.

  80. If CCC's current position that it has no obligation to cover Plaintiff's losses is correct, then the representations CCC made in selling the Policy were, in fact, false, and were made without any reasonable basis for believing them to be true. If CCC's current position is to be believed, then CCC did not plan or intend to insure losses associated with viruses or pandemics and, in fact, planned and intended the contrary.

  81. As a direct and proximate result of CCC's acts, Plaintiff has sustained damages in an amount in excess of this Court's jurisdictional limits, plus interest, for which CCC is liable, including the premiums it paid to CCC. The amount of Plaintiff's damages is not yet precisely known but will be established according to proof.

13
COMPLAINT

## SIXTH CAUSE OF ACTION

## DECLARATORY RELIEF

### (Against All Defendants)

82. Plaintiff contends that it is entitled to coverage under the applicable insurance policy as a result of the presence of COVID-19 and the related lockdown orders. Plaintiff is informed and believes, and on that basis alleges, that CCC disputes that Plaintiff is entitled to such coverage. Therefore, an actual and justiciable controversy exists between Plaintiff, on the one hand, and CCC, on the other.

83. Plaintiff seeks a judicial declaration from this Court confirming that Plaintiff's contentions, as stated above, are correct. A declaration is necessary in order that the parties' dispute may be resolved and that they may be aware of their respective rights and duties.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for judgment as follows:

1. For general and special damages according to proof;
2. For pre-judgment and post-judgment interest, according to proof;
3. For punitive and exemplary damages, according to proof;
4. For attorney's fees, according to proof;
5. For costs of suit incurred herein; and
6. For such other relief the court may deem just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands trial of his claims by jury to the extent authorized by law.

Dated: March 2, 2023               SETAREH LAW GROUP

                                   _____
                                   TYSON GIBB
                                   Attorney for Plaintiff
                                   LAW OFFICES OF SHAUN SETAREH, APC

14
COMPLAINT